```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
BACKYARD BRINE, INC.,

                 Plaintiff,              MEMORANDUM & ORDER
                                         22-CV-04342 (JS)(ST)
     -against-

THE BACKYARD FOOD COMPANY, LLC,

                 Defendant.
---------------------------------X
APPEARANCES

For Plaintiffs:     Mark Samuel Kaufman, Esq.
                    Kaufman & Kahn, LLP
                    155 East 44th Street, 19th Floor
                    New York, New York 10017

For Defendant:      John T. McInnes, Esq.
                    McInnes IP Law, LLC
                    110 W. Boylston Street
                    Worcester, Massachusetts 01606
```

SEYBERT, District Judge:

Plaintiff, Backyard Brine, Inc. (hereafter, "Plaintiff" or "Backyard Brine") commenced this action against The Backyard Food Company, LLC (hereafter, "Defendant" or "Backyard Food") alleging: (1) trademark infringement pursuant to 15 U.S.C. § 114; (2) federal common law trademark infringement pursuant to 15 U.S.C. § 1125(a); (3) false designation of origin pursuant to 15 U.S.C. § 1125(a); (4) unfair competition pursuant to 15 U.S.C. § 1125(a); (5) New York State common law trademark infringement; and (6) New York State common law unfair competition. (See generally Compl., ECF No. 1.)  Presently before the Court is

Defendant's Motion to Dismiss (hereafter "Dismissal Motion", ECF No. 15) seeking dismissal pursuant to Federal Rule of Civil Procedure (hereafter, "Rule") 12(b)(6).  Defendant contends dismissal is required based solely upon the doctrine of laches. (Dismissal Motion at 7.)  For the reasons that follow, Defendants' Dismissal Motion is DENIED.

BACKGROUND[1]

I. Factual Background

   A. The Parties

Plaintiff Backyard Brine is a corporation organized under the laws of New York with its principal place of business in New York.  (Compl. ¶ 2.)  Since at least as early as May 18, 2023, Backyard Brine has used the "Backyard Brine" word, design, and logo marks in connection with its sale of various pickle products, including but not limited to: dill pickle products; pickled cucumbers; pickled jalapenos; pickled vegetables; and spicy pickle products.  Backyard Brine advertises and promotes its products throughout the United States.  (Id. ¶ 6.)

Defendant Backyard Food is a New York corporation, with its principal place of business in New York.  (Dismissal Support Memo at 9.)  Backyard Food was founded in 2013 and sells canned produce, including pickle products, using "The Backyard Food

---

[1] The facts discussed herein are derived from the Complaint and the parties' submissions relative to the instant Dismissal Motion.  (See Compl.; Dismissal Support Memo, ECF No. 16; Opp'n, ECF No. 20.)

2

Company" word mark. (Id.; Compl. ¶11.) Backyard Food has used its mark in association with its goods since August 1, 2013 and in commerce beginning on December 10, 2013. (Dismissal Support Memo at 9.)

On July 24 2022, Plaintiff Backyard Brine commenced this trademark infringement action against Defendant Backyard Food based upon Defendant's use of the "Backyard Food" mark in connection with advertisement, sale, and distribution of pickle products. (See Compl. ¶¶1, 11-13.) Plaintiff asserts six causes of action, described supra, against Defendant. (See generally id.)

B. Relevant Trademarks and Applications

1. Plaintiff's Word and Logo Trademark Applications

On March 19, 2014, Plaintiff filed trademark applications for "Backyard Brine" word and logo marks with the United States Patent and Trademark Office (hereafter, "USPTO"). (Compl. ¶ 15; Def. Ex. F, ECF No. 17-6; Def. Ex. G, ECF No. 17-7.) These applications were made in connection with dill pickle products, pickled cucumbers, pickled jalapenos, pickled vegetables, and spicy pickle products. (Compl. ¶ 21; Def. Exs. F-G.) On October 8, 2014, the USPTO published Plaintiff's "Backyard Brine" mark application for opposition. (Id. ¶ 19.) No person or entity, including Defendant, opposed Plaintiff's

3

application. (Id.) The trademark applications were ultimately approved and registered by the USPTO on January 13, 2015. (Id.)

### 2. Defendant's Word and Logo Trademark Applications

#### a) Defendant's Word Trademark Application

On March 31, 2014, just twelve days after Plaintiff filed its trademark applications, Defendant filed a trademark application with the USPTO for the "Backyard Food" word mark in connection with "jellies, jams, dehydrated fruits, pickled products, preserved vegetables, pickle relish, pizza dough, and flavor infused sugar." (Id. ¶ 16.) On July 3, 2014, the USPTO issued an Office Action (hereafter, "Office Action 1") rejecting Defendant's application for a "Backyard Food" word mark. (Id. ¶ 17.) In Office Action 1, the USPTO stated Defendant's application could not be granted because of Plaintiff's previously-filed application for a "Backyard Brine" mark, which, if granted, would likely be confused with Defendant's proposed "Backyard Food" mark. (Id.) Defendant was given six months to respond to Office Action 1, but did not do so. (Id. ¶ 18.)

On October 8, 2014, the USPTO published Plaintiff's "Backyard Brine" mark application for opposition. (Id. ¶ 19.) No person or entity, including Defendant, opposed Plaintiff's application. (Id.) "On January 9, 2015, the USPTO suspended Defendant's [word] trademark application, subject to the successful registration of the trademark applications for the

4

['Backyard Brine'] marks." (Id. ¶ 21.) Four days later, on January 13, 2015, the USPTO granted Plaintiff's application for "Backyard Brine" marks, such that "Backyard Brine" became a federal trademark for dill pickle products, pickled cucumbers, pickled jalapenos, pickled vegetables, and spicy pickle products. (Id.)

On March 21, 2018, the USPTO issued another Office Action, (hereafter "Office Action 3"),[2] whereby it rejected Defendant's word mark application because the word mark was likely to be confused with Plaintiff's existing word mark. (Id. ¶30.) In particular, the USPTO stated the marks were confusingly similar in appearance "because they are compromised of the identical first term BACKYARD, which is the dominant indicator source of both marks." (Id. ¶31.) The USPTO further stated:

> It is obvious from the identification of goods in the application and registrations that the goods are essentially identical. Specifically, both parties offer pickle products. Pickled vegetables are a type of preserved vegetable, and pickled relish is simply diced/minced pickle products for condiment purposes. Since the goods are identical, it is presumed that they travel in the same channels of trade to the same class of consumers.

(Id. ¶32.) The USPTO additionally noted consumers encountering Plaintiff and Defendant's respective marks would be reasonably likely to believe their products originated from the same source.

---

[2] The Court adopts Plaintiff's chronological numeration of the Office Action letters as set forth in its Compliant. (See Compl. ¶¶ 17, 23, 30.)

5

(Id. ¶33.) Defendant again had six months to respond to Office Action 3, but did not do so. (Id. ¶35.) Following Defendant's non-response, on October 18, 2018, the USPTO issued an Examiner's Amendment noting that the portion of Defendant's word mark application seeking trademark protection for pickle, preserved vegetable, and pickled relish products was deemed abandoned. (Id. ¶36.) Defendant's application was permitted to proceed only as it related to jellies and jams, jerky, dehydrated fruits, pizza dough, and flavor infused sugar, and was approved on February 12, 2018. (Id.; see also Def. Ex. D, ECF No. 17-4.) Defendant's word mark application for those goods was approved and registered on February 12, 2019. (Def. Ex. D.)

        b)    Defendant's Logo Trademark Application

On June 12, 2015, Defendant filed a trademark application for the "Backyard Food" logo in connection with pizza dough and relish products. (Id. at ¶ 22.) On June 26, 2015, the USPTO issued an Office Action (hereafter, "Office Action 2") rejecting Defendant's application to register the "Backyard Food" logo mark with regard to relish products because of the likelihood of confusion with Plaintiff's pre-existing "Backyard Brine" marks for pickle products. (Id. ¶23.) On December 21, 2015, Defendant removed "relish" from the list of goods and services on its application. (Id. ¶24.) On December 7, 2018, the USPTO deemed Defendant's logo trademark application to be abandoned. (Id. ¶38.)

C.   Party Correspondence: Cease-and-Desist Letters

On August 1, 2016, Plaintiff sent a cease-and-desist letter to Defendant asking Defendant to refrain from using the "Backyard Food" word and logo marks in connection with pickle products.  (Id. ¶26.)  In the letter, Plaintiff argued that the sound and appearance of the words "Backyard Brine," which are included in Plaintiff's word mark and logo, were confusingly similar to Defendant's "Backyard Food Company" word mark and logo, especially when utilized in connection with pickle products. (Id. ¶ 28.)  Defendant responded, stating the marks it used were not confusingly similar to Plaintiff's marks because the logos were different in appearance. (Id. ¶27.)  According to Plaintiff, Defendant's response did not address Plaintiff's arguments that the sound and appearance of the words "Backyard Brine" and "The Backyard Food Company" contained in the companies' respective logos were confusingly similar, nor did it address the fact that the words and logos were being used in connection with the same type of products, i.e., pickle products.  (Id. ¶¶ 28-29.)

Over five years later, on May 16, 2022, Plaintiff sent another cease-and-desist letter to Defendant.  (Id. ¶ 40.) Defendant responded to the letter on July 7, 2022, and "made clear that Defendant would not voluntarily cease and desist from using" its "Backyard Food" marks.  (Id. ¶ 41.)

7

D. <u>Instances of Actual Confusion</u>

Plaintiff submits Defendant's use of the "Backyard Food" marks in connection with the sale of its pickle products has led to actual confusion by third parties. (<u>Id.</u> ¶ 48.) One illustration of such confusion occurred when Plaintiff learned that it and Defendant utilized the same co-packer, Grouse Hunt Farms Co. (hereafter, "Grouse Hunt"). (<u>Id.</u> ¶¶ 49-50.) A representative from Grouse Hunt found the parties' respective marks to be so similar that it accidentally packed Plaintiff's products according to the specifications provided by Defendant. (<u>Id.</u> ¶ 51.) In addition to using the same co-packer, Plaintiff and Defendant also use the same distributor for their pickle products. (<u>Id.</u> ¶ 52-54.)

[Remainder of page intentionally left blank]

DISCUSSION

I. Legal Standard

   A. Motion to Dismiss

A claim is properly dismissed pursuant to Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In determining whether to grant a Rule 12(b)(6) motion, courts must "accept as true all factual allegations contained in the Complaint and draw all inferences in plaintiff's favor." Glob. Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006). "A complaint may not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt, even when the complaint is liberally construed, that the 'plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, to survive a motion to dismiss, Plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." Basile v. Levittown United Tchrs., 17 F. Supp. 3d 195, 200 (E.D.N.Y. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

B. Laches

Laches is an equitable defense that bars a plaintiff's claim where he has engaged in "unreasonable and inexcusable delay that has resulted in prejudice to the defendant." Eppendorf-Netheler-Hinz GMBH v. Nat'l Sci. Supply Co., 14 F. App'x 102, 105 (2d Cir. 2001) (citing Ikelionwu v. United States, 150 F.3d 233, 237 (2d Cir. 1998) (quotation marks omitted)). The doctrine of laches may bar trademark-related claims where a Plaintiff unreasonably delayed in commencing an action to enforce its rights, and such delay has resulted in prejudice to the defendant. Thurber v. Finn Academy: An Elmira Charter Sch., 583 F. Supp. 3d 437, 449 (W.D.N.Y. 2022). To prove a laches defense, the defendant must show: (1) plaintiff had knowledge of the infringing activity; (2) plaintiff inexcusably delayed in taking action; and (3) defendant would be prejudiced if plaintiff belatedly asserted its rights. Id.

Because the doctrine of laches is an equitable defense, rooted in the principles of equity and good faith, it "may not be used to shield a party from the consequences of conduct it knows to be wrongful." Id. (citing Harley-Davidson, Inc. v. O'Connell, 13 F. Supp. 2d 271, 279 (N.D.N.Y. 1998)). Indeed, the Second Circuit has repeatedly held that "laches is not a defense against injunctive relief when the defendant intended the infringement." Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104,

107 (2d Cir. 2000) (quoting Harlequin Enters. Ltd. v. Gulf & W. Corp., 644 F.2d 946, 950 (2d Cir. 1981)).  Several district courts have found that the unclean hands doctrine also bars the laches defense as against claims for monetary relief.  See, e.g., Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco v. MGM Mirage, No. 08-CV-3157, 2008 WL 4974800, at *6 (S.D.N.Y. Nov. 24, 2008) (holding, in a case where monetary damages were sought, "dismissal based on laches at this [pleading] stage of the litigation would not be proper because even if the instant action was filed after the applicable limitations period, Plaintiff's Amended Complaint alleges intentional infringement, a set of facts that, if true, would avoid the application of the laches defense altogether"); Lexington Furniture Indus., Inc. v. Lexington Co., AB, No. 19-CV-6239, 2022 WL 13848274, at *4 (S.D.N.Y. Oct. 24, 2022), aff'd, No. 22-CV-02993, 2023 WL 8889514 (2d Cir. Dec. 26, 2023) (holding laches does not bar claims, including claims for monetary damages, because "[d]istrict courts within this Circuit have repeatedly held that conduct amounting to willful infringement forecloses a laches defense").

To determine which party bears the burden of proving or disproving the laches defense, courts consider the statute of limitations that applies to the cause of action at issue.  Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996).  If a suit is brought within the statute of limitations, the burden is

11

on the defendant to show that the doctrine of laches applies. Id. In contrast, if the suit is brought after the statutory time period has expired, "the burden is on the complainant to aver and prove the circumstances making it inequitable to apply laches to his case." Id. (quoting Leonick v. Jones & Laughlin Steel Corp., 258 F.2d 48, 50 (2d Cir. 1958)); see also BJB Ltd. v. iStar Jewelry LLC, 533 F. Supp. 3d 83, 95 (E.D.N.Y. 2021) ("If defendants can establish that the plaintiff delayed bringing suit six or more years after plaintiff knew or reasonably should have known of the alleged infringing activity, a presumption of laches applies, meaning the burden of providing evidence to defeat laches shifts to the plaintiff, although the ultimate burden of persuasion remains with defendant.") (citing Pecorino v. Vutec Corp., 6 F. Supp. 3d 217, 222 (E.D.N.Y. 2013)).

The Lanham Act does not proscribe a statute of limitations for trademark infringement claims; however, the Second Circuit has consistently held that a six-year limitations period applies. Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., 897 F.3d 413, 419 (2d Cir. 2018) ("While the Lanham Act includes no specific statute of limitations, in evaluating a laches defense to trademark infringement in a New York suit, we analogize to New York's six-year statute of limitations for fraud claims."). The same is true for other causes of action brought under the Lanham Act. See, e.g., Conopco, 95 F.3d at 191 (applying six-year

12

statute of limitations to Lanham Act claims of unfair competition and false advertising); H&R Industries, Inc. v. Kirshner, 899 F. Supp. 995, 1001 (E.D.N.Y. 1995) (applying six-year statute of limitations to Lanham Act claims of false designation of origin); Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 859 F. Supp. 1521 (S.D.N.Y. 1994) (applying six-year statute of limitations to Lanham Act claims of false advertising). Although courts in the Second Circuit have reached varied conclusions concerning the statute of limitations for common law claims of trademark infringement and unfair competition, see Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A., No. 04-CV-3136, 2005 WL 13682, at *7 (S.D.N.Y. Jan. 3, 2005) (collecting cases), where these claims are based on the same activity as Lanham Act claims, the six-year statute of limitations applies. Express Gold Cash, Inc. v. Beyond 79, LLC, No. 18-CV-0837, 2019 WL 4394567, at *4 (W.D.N.Y. Sept. 13, 2019).[3]

---

[3] Courts have also held that New York common law claims of trademark infringement and unfair competition are "continuing torts" such that the "last actionable act" of the alleged wrongful conduct may fall within the statute of limitations. Express Gold Cash, 2019 WL 4394567, at *4 (discussing common law unfair competition may be subject to the continuing tort doctrine and citing cases concluding same); Thurber, 583 F. Supp. 3d at 449 (relying on a New York State case law in concluding trademark infringement is a continuing tort); see also Neufeld v. Neufeld, 910 F. Supp. 977, 983 (S.D.N.Y. 1996) (explaining the "continuing tort" doctrine).

13

"The determination of whether laches bars a plaintiff from equitable relief is entirely within the discretion of the trial court." In re Google Digital Advert. Antitrust Litig., 627 F. Supp. 3d 346, 404-05 (S.D.N.Y. 2022). Evaluation of a laches defense generally requires the Court to engage in a "fact-intensive analysis and balancing of equities that would require the Court to consider matters outside of the pleadings that are in dispute." VOX Amplification Ltd. v. Meussdorffer, 50 F. Supp. 3d 355, 364 (E.D.N.Y. 2014) (citing Lennon v. Seaman, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999)). "Indeed, case law uniformly urges caution when considering a defense of laches even at the summary judgement stage – and even more so on a motion to dismiss." BJB Ltd., 533 F. Supp. 3d at 96; see also Thurber, 583 F. Supp. 3d at 449 ("[W]hile Defendants may well ultimately prevail on a laches defense, the Court cannot reach that conclusion as a matter of law. In particular, issues of good faith are generally not amenable to resolution on the pleadings. The Court does not find Plaintiff's proposed state law trademark infringement claim futile on the basis of laches at this stage of the proceedings."); In re Google, 627 F. Supp. 3d at 404-05 ("[L]aches can rarely be successfully invoked on a Rule 12(b)(6) motion."). However, in circumstances where "laches is clear on the face of the complaint, and where it is clear that [plaintiff] can prove no set of facts to avoid the insuperable bar, a court may consider the [laches]

14

defense on a motion to dismiss." VOX Amplification Ltd., 50 F. Supp. 3d at 364 (citations omitted).

II. Analysis

    A. Defendant Bears the Burden of Showing the Doctrine of Laches Applies

When a plaintiff brings an action against a defendant within the applicable statue of limitations and the defendant asserts the defense of laches, the defendant bears the burden of showing the defense applies. Conopco, 95 F.3d at 191. Here, it is undisputed Plaintiff commenced this action within the statute of limitations applicable to the claims alleged.[4] (See Dismissal Motion at 8 (stating "[t]he present action was not filed until July 24, 2022, five years and fifty-one weeks after [Plaintiff] admittedly was aware of [Defendant's] use of its mark" and noting that the Complaint was filed "within one week" of the applicable six-year statute of limitations); Opp'n at 10 ("Without dispute, Plaintiff filed this case on July 24, 2022, less than six years after it sent to Defendant a demand letter")). Accordingly, Defendant is not entitled to the presumption of laches and bears the burden of proving its laches defense applies. Conopco, 95 F.3d 187 at 191; cf. BJB Ltd., 533 F. Supp 3d at 95 (averring a

---

[4] In their respective submissions, the parties concede the claims at issue are subject to a six-year statute of limitations. (Dismissal Support Memo at 13 (discussing six-year statute of limitations applicable to Lanham Act cases); Opp'n at 10 (same)). The Court agrees that a six-year statute of limitations applies to the claims in the instant case, consistent with the case law examined supra.

15

presumption of laches applies where plaintiff shows suit was brought after the statute of limitations expired).

> B. <u>Defendant Has Failed to Establish Plaintiff's Claims are Barred by Laches as a Matter of Law</u>

Defendant argues Plaintiff's claims are barred by laches because: (1) Plaintiff knew, at least as early as August 1, 2016, the date it sent its initial demand letter to Defendant, that Defendant was using the "Backyard Foods" mark; (2) Plaintiff cannot explain its "inexcusable and unreasonable delay" in initiating the instant action given its knowledge of Defendant's mark usage nearly six years prior to commencing litigation; (3) Defendant has suffered "significant prejudice" by Plaintiff's delay in action as evidenced by its substantial business growth over the past six years; and (4) Defendant does not have "unclean hands" because it "did not adopt its mark with the intention to deceive customers into believing its products originated from" Plaintiff. (Dismissal Support Memo at 10, 14-15, 19-24, 26.)  In contrast, Plaintiff argues this case should not be dismissed on the basis of laches because: (1) in order to prove laches, Defendant must establish prejudice which is a fact-intensive inquiry not suited for resolution on a motion to dismiss; and (2) Defendant has unclean hands because it intended to infringe upon Plaintiff's mark. (Opp'n at 10, 13). The Court agrees with Plaintiff that, at this early stage in litigation, Defendant has failed to

16

establish it is entitled to dismissal based upon its laches defense.

To adequately prove a laches defense, Defendant must show: (1) Plaintiff had knowledge of the infringing activity; (2) Plaintiff inexcusably delayed in taking action; and (3) Defendant would be prejudiced if Plaintiff belatedly asserted its rights. Thurber, 583 F. Supp. 3d at 449. Because laches is an equitable doctrine, Defendant must also show that it acted in good-faith and with clean hands. Harley-Davidson, 13 F. Supp. 2d at 279 ("[L]aches may not be used to shield a party from the consequences of conduct it knows to be wrongful. . . . Thus, defendants must also establish that they acted in 'good faith.'") (internal citations omitted).

It is undisputed Plaintiff knew, at least as early as August 1, 2016, that Defendant was using its "Backyard Foods" marks. (Compl. ¶ 26; Dismissal Support Memo at 9.) Moreover, Plaintiff does not appear to have offered any "excuse" for the nearly six-year delay in commencing the instant suit. (See generally Compl.; Opp'n.) However, at this nascent point in the litigation, upon the present Complaint, and without the benefit of discovery, the Court cannot, as a matter of law, conclude Defendant has established "it has been prejudiced by the [P]laintiff's unreasonable delay in bringing the action" or that it "changed [its] position in a way that would not have occurred if the

17

[P]laintiff had not delayed." Conopco, 95 F.3d at 192; see also VOX Amplification Ltd., 50 F. Supp. 3d at 364 (stating evaluation of a laches defense generally requires a "fact-intensive analysis and balancing of equities that would require the Court to consider matters outside of the pleadings that are in dispute."); BJB Ltd., 533 F. Supp. 3d at 96 (cautioning against considering the defense of laches at the motion to dismiss stage); In re Google, 627 F. Supp. 3d at 404-05 ("[L]aches can rarely be successfully invoked on a Rule 12(b)(6) motion").

Moreover, even if Defendant did establish prejudice at this stage in the litigation, which it has not, the Complaint adequately alleges that Defendant intentionally infringed upon Plaintiff's trademark, which would serve as a total bar on the "application of the laches defense." (Compl. at ¶¶ 14, 31-32, 39, 56); Societe Des Bains, 2008 WL 4974800, at *6; Lexington Furniture, 2022 WL 13848274, at *4 ("District courts within this Circuit have repeatedly held that conduct amounting to willful infringement forecloses a laches defense."); see also VOX Amplification Ltd., 50 F. Supp. 3d at 365 (finding "it would be inappropriate for the Court to dismiss" the applicable claims on a Rule 12(b)(6) motion because defendant's counterclaim "clearly alleges that the purported infringing acts . . . were intentional"); Lexington Furniture, 2022 WL 13848274, at *4 ("District courts within this Circuit have repeatedly held that

18

conduct amounting to willful infringement forecloses a laches defense"). Thus, in light of Plaintiff's plausible allegations that Defendant acted with "unclean hands," the Court cannot, at this stage of the litigation and without further discovery, dismiss Plaintiff's claims on the basis of laches. Glob. Network Commc'ns, 458 F.3d at 154 (stating, on a motion to dismiss, a court must "accept as true all factual allegations contained in the Complaint and draw all inferences in plaintiff's favor" and dismissal is appropriate on a Rule 12(b)(6) motion only where "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotation marks omitted). Therefore, Defendant's Dismissal Motion is denied.

## CONCLUSION

For the stated reasons, it is hereby ORDERED that Defendant's Dismissal Motion (ECF No. 15) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February 26, 2024
       Central Islip, New York